WILLIAM H. PHELPS *vs.* HENRY W. WEBSTER & others.

Franklin.   Sept. 21, 1881; Sept. 20, 1882. — Jan. 9, 1883.   COLBURN & HOLMES, JJ., absent.

> The proprietors of a town in 1684 laid out two highways through the town, ten rods wide, crossing each other at a right angle. In 1723 they laid out a lot at the intersection of the two highways, describing it as "left for the minister," and as bounded "against" one of them, and as "butting" upon the other. Neither in 1684 nor in 1723 had the proprietors of a town any authority to lay out highways or town ways. From time immemorial the town used a portion of the way laid out in 1684 for a schoolhouse, and up to 1860 maintained a hearse-house upon it, and in 1811 the town voted to give a lot of land within the way to the Commonwealth for a gun-house. *Held,* that by the grant of 1723 the fee to the centre of the ways did not pass, and that the lot was bounded by the external lines of the ways.

TORT, for breaking and entering the plaintiff's close in North-field.  Writ dated August 6, 1880.  Answer: 1. A general denial.  2. That the acts alleged to have been committed by the defendants were done by them, as a committee of a school district in Northfield, in a place laid out by the original proprietors of the town in 1684 as a highway, and that in 1723 the said proprietors made a grant to the plaintiff's grantor of land abutting upon the highway, no part of which was included within the highway.

At the trial in the Superior Court, before *Colburn,* J., the judge ruled that the action could not be maintained, directed a verdict

for the defendants, and reported the case for the determination of this court. If the ruling was right, judgment was to be entered on the verdict; otherwise, the verdict to be set aside, and a new trial granted. The facts appear in the opinion.

The case was argued at the bar in September 1881, by *S. O. Lamb*, for the plaintiff, and by *C. C. Conant*, for the defendants; and was reargued in September 1882 by the same counsel.

MORTON, C. J. The records of the original proprietors of Squakheag, now the town of Northfield, show that in 1684 said proprietors laid out a highway ten rods wide, which has ever since existed, marked by fences on each side, and which is the road to which the controversy in this case relates. The report of the committee upon which this action was taken is as follows: "May 28, 1684. Wee hose names are under wrighten have layed out the high wayes of Squawkheag town plot 10 rods wide through the town and a highway one the north side of Mikah Mudg hom lott & the south side of John Alexander hom lott ten rod wid to the meadow fence and soe it runs into the woods estward." The records also show that in 1723 a lot of land was laid out for the minister, which is described as follows: "A home lott, left for the minister, containing seven acres & a half, bounded southerly against the highway that runs across the town, from the meetinghouse, running easterly into the woods, buting westerly upon the brawd street, that runs threw the town, and northerly against Jacob Roots hom lott, being in width 20 rods."

The plaintiff now owns this lot, and his claim is that, under this grant, he owns the fee to the centre of the road which runs easterly. This is a vital question in the case. Unless the grant of the proprietors conveyed the fee to the centre of the road, as parcel of the lot described, no subsequent deed by the grantee or his successors in title could convey it, and the plaintiff shows no title to the locus.

The general rule in this Commonwealth is, as stated in *Boston* v. *Richardson*, 13 Allen, 146, that a deed bounding land generally by a highway, with no restrictive or controlling words, conveys the grantor's title in the land to the middle of the highway. But it is a rule of construction, and, as stated by Chief Justice Shaw in *Webber* v. *Eastern Railroad*, 2 Met. 147, 151, and approved by the court in *Codman* v. *Evans*, 1 Allen, 443,

446, it is " a question of construction in each particular case, and depends, as in all other cases, upon the intent of the parties, as expressed in the descriptive part of the deed, explained and illustrated by all the other parts of the conveyance, and by the localities and subject matter to which it applies."

There are features in the deed we are construing, and in the subject matter and localities and surrounding circumstances, which seem to us to indicate the intention that the minister's lot should be bounded by the sides, and not the centres, of the roads on two sides of it. The original proprietors were the owners of the whole township; it seems that they had made a plot or plan of their lands as early as 1684, as the report of the committee quoted above speaks of the " Squawkheag town plot;" they then set apart and appropriated to public use, under the name of highways, two strips of land ten rods wide and crossing each other at right angles; they from time to time set apart or granted to different persons home lots, and in 1723 they set apart the minister's lot, describing it as " a home lott left for the minister." This expression implies that the lot for the minister was something that remained, or which was not taken by the appropriations of their land previously made, and has some tendency to show that they regarded it as outside of the land set apart for public uses, and not as including a part of that land.

It is to be observed that neither in 1684 nor in 1723 had the proprietors any authority to lay out highways or town ways, that authority being vested in 1684 respectively in the County Court and selectmen. Anc. Chart. 127. And in 1693 the authority to lay out highways was vested in the Court of Quarter Sessions of the Peace. St. 1693–4, (5 W. & M.) *c.* 6, § 3; 1 Prov. Laws, (State ed.) 136. Anc. Chart. 268. It is to be presumed that the proprietors knew this, and, although their records speak of having " layed out the highways " ten rods wide, we think these words were not used in the sense of a technical laying out, by which only an easement for the purpose of travel is granted to the public. They appear to have used the expression " laid out " in reference to the granting of the minister's lot, where they clearly intended to grant a fee. It was shown in evidence that, after this so-called " laying out " in 1684, the town continuously used the land thus " layed out " for purposes other than those of

travel, and which were inconsistent with the existence merely of an easement for travel. The part of the road which runs eastward from the Main Street, usually travelled, is narrow; as the travelled track approaches Main Street it divides into two tracks, leaving a triangular lot five or six rods wide on Main Street and coming to a point about eighteen rods easterly. This triangular piece is opposite the plaintiff's lot, and is the locus in controversy. It appeared that the town had from time immemorial maintained a schoolhouse upon this lot; also, that from a period as long ago as any one can remember, and up to within twenty years, it had maintained a hearse-house within the limits of said road; also, that in 1811 the town voted to give a lot of land within the way to the Commonwealth for a gun-house, and by its selectmen executed a deed of the lot to the Commonwealth, and that a gun-house was erected and remained upon it for about forty years.

We refer to these facts not as showing a title in the town by adverse possession, which may be a question of fact for the jury, but as furnishing some assistance in the construction of the record, which is so brief and imperfect. They show the practical construction which the parties interested put upon the acts of the proprietors, and tend to show that the proprietors intended to dedicate this strip of land ten rods wide, not merely for purposes of travel, but for other public uses, and thus to throw light upon their intentions when, in 1723, they set apart a home lot left for the minister.

Again, other language used in the descriptive part of the grant of the minister's lot aids this theory. It is bounded southerly "against" the highway that runs from the meeting-house easterly into the woods, and "buting" westerly upon the broad street that runs through the town. Undoubtedly the words "against" and "buting" are used in the same sense. Each expression imports that the lot does not include any part of the highway. Two pieces of land abut upon each other when their ends meet, not when one overlaps the other. The word "against" implies, in all senses in which it is used, opposition. One piece of land cannot be aptly said to be against another if it includes a part of the latter. We do not mean to say that either of these features of the grant, standing alone,

would necessarily take a case out of the general rule. But the combined effect of all the matters to which we have alluded is to produce the conviction that the proprietors in their grant of the minister's lot in 1723 did not intend to grant the fee to the centre of the ways on which it abutted, but intended that the lines of the lot should be the external lines of the ways.

It follows that the plaintiff cannot maintain this action. He shows no record title, and the evidence does not show any possession which, in the absence of a record title, would enable him to maintain the action.          *Judgment on the verdict.*